**Raissa CLARKSON, Plaintiff,**

v.

**TOWN OF FLORENCE, Defendant.**

**No. 01–C–0587.**

United States District Court,
E.D. Wisconsin.

May 2, 2002.

Jeff Scott Olson, Madison, WI, for Plaintiff.

Barbara J. Janaszek, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

### I. BACKGROUND

Plaintiff Raissa Clarkson owns the Gold Nugget Tavern in the Town of Florence, Wisconsin. As part of its entertainment the Gold Nugget features dancers who perform while partially nude. In October 2000 the Town enacted an ordinance prohibiting nude dancing in taverns. In this action, brought under 42 U.S.C. § 1983, plaintiff challenges the constitutionality of the ordinance under the First Amendment.

Section I of the ordinance provided as follows:

It is unlawful for any person to perform or engage in, or for any licensee or manager or agent of the licensee, or the owner of the licensed premises, to permit any person, employee, entertainer, or patron to perform or engage in any live act, demonstration, dance or exhibition on the premises of the licensed es-

tablishment, or to appear in such manner or attire as to expose to view any portion of his or her genitals, pubic area, vulva, anus, anal clef [sic] or cleavage, nor shall suffer nor permit any female to appear on the licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola; or any simulation thereof.

Florence, Wis., Ordinance 10–9–00 (Oct. 9, 2000). For convenience I will refer to the ordinance's specification of body parts required to be covered as the "clothing requirement."

Plaintiff claims that the ordinance was facially unconstitutional. She further claims that enactment of the ordinance harmed her by discouraging prospective purchasers from buying the tavern, causing the business to lose revenue and her to suffer emotional distress. She seeks damages and declaratory and injunctive relief.

Defendant passed the ordinance on October 9, 2000. On June 1, 2001 plaintiff filed the present action, and on June 25, 2001, defendant agreed not to enforce the ordinance while the lawsuit was pending. On August 13, 2001, defendant passed a resolution stating that it would not enforce the ordinance, and on November 26, 2001, defendant repealed it.

Before me now are plaintiff's motion for summary judgment on the issue of liability and defendant's motion for summary judgment on liability and damages. Defendant argues that the court does not have subject matter jurisdiction because (1) plaintiff lacks standing to challenge the ordinance and (2) her claim is moot due to the repeal of the ordinance. Defendant also contends that the ordinance was constitu-

tional and that plaintiff suffered no damage as the result of its enactment.

Additional facts will be stated in the course of the decision.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.* In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When both parties have moved for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. If issues of fact exist, neither party is entitled to summary judgment. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.1983).

---

1. In addition to the summary judgment motions, defendant moves to strike the declarations of Raissa Clarkson and Tami Goyen and the affidavit of Jeff Scott Olsen based on the alleged failure of the declarants and affiant to comply with various legal requirements.

However, in deciding the summary judgment motions I have found it unnecessary to consider the documents to which defendant objects. Thus the motion to strike will be denied as moot.

The fact that both parties have moved for summary judgment, and thus both parties simultaneously contend that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. *See* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720, at 327–28 (3d ed.1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *See Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir.1957). Cross motions for summary judgment do not constitute a waiver of a trial. *See Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir.1996). The proper procedure is to assess the merits of each summary judgment motion independently. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. Moreover, the fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. *See Grow v. City of Milwaukee*, 84 F.Supp.2d 990, 996 (E.D.Wis.2000); 10A Wright, *supra*, at 335.

I will consider; first, defendant's motion for summary judgment based on standing and mootness, second, the constitutionality of the ordinance as raised in the parties' cross motions for summary judgment on liability, and, third, the issue of plaintiff's alleged damages.

### III. SUBJECT MATTER JURISDICTION

■ Under Article III of the Constitution, the federal judicial power extends only to "cases" or "controversies." U.S. Const. art. III. The "case or controversy" requirement ensures that federal courts will hear only justiciable or live cases. *Crosetto v. State Bar*, 12 F.3d 1396, 1403 (7th Cir.1993). The doctrine of standing focuses on justiciability at the time the action is commenced. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The mootness doctrine requires that the case remain live throughout the pendency of the action. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).

### A. Standing

■ The standing analysis focuses not on the claim itself but on the party bringing the challenge. *Freedom from Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir.1988). To establish standing, a plaintiff must show (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir.2001), *cert. denied*, — U.S. —, 122 S.Ct. 1300, 152 L.Ed.2d 212 (2002).

■ The requirement that a plaintiff have an injury in fact means that she must have an actual stake in the outcome that goes beyond "intellectual or academic curiosity." *S.E. Lake View Neighbors v. Dep't of Housing & Urban Dev.*, 685 F.2d 1027, 1033 (7th Cir.1982). The requirement is an " 'undemanding' " one. *Family & Chil-*

*dren's Ctr., Inc. v. School City of Misha-waka*, 13 F.3d 1052, 1058 (7th Cir.1994) (quoting *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir.1991)). Provided that a litigant can establish the existence of a distinct and palpable injury, even a minor injury can satisfy the case or controversy requirement. *See ACLU v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir. 1986) (holding that plaintiffs' averment that they altered their normal routes of travel to avoid viewing a lighted cross displayed on public property satisfied Article III standing requirements). Standing can be predicated on a non-economic injury. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). Although psychological harm such as that resulting from witnessing conduct with which one disagrees is, in itself, insufficient to confer standing, if the observation actually causes a litigant to alter her behavior, standing will be found. *Freedom from Religion Found., Inc.*, 845 F.2d at 1467–68.

■ Considering the evidence in the light most favorable to her, plaintiff has submitted sufficient evidence to meet the standing requirement. Plaintiff has shown that as the result of the ordinance she suffered injury in fact. First, she testified in her deposition that a Town official advised her that if she continued to present erotic dancing she would suffer sanctions including the loss of her liquor license. (Janaszek Aff. in Opp. to Pl.'s Mot. for Summ. J., Ex. A at 79.) The threat of invasion of a legally protected interest is sufficient to confer standing. *See, e.g., Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

Second, plaintiff has shown that enactment of the ordinance adversely affected her attempt to sell her business. At a minimum, it delayed the contemplated sale of the tavern to Tami Goyen, one of her employees. Both plaintiff and Goyen confirmed this in their depositions. Plaintiff testified that "the short of it was that we agreed upon this price, her knowing what the business brought in after she's been working there for so many years .... And, of course, once she found out about [the ordinance] we didn't see any use on going any further at that." (Janaszek Aff. in Opp. to Pl.'s Mot. for Summ. J., Ex. A at 77.) Goyen testified similarly, stating that when she discovered that the ordinance would not permit her to be grandfathered under plaintiff's liquor license "that's when I said 'I'm done, forget it. I'm not going to hand over my dad's $10,000 and lose it.' That was the end of her." (*Id.*, Ex. B at 41.)

Third, plaintiff has established actual injury by showing that she lost at least some business as a result of the ordinance. She testified in her deposition that at least three or four people had "questioned me about what was going on with the ordinance and stated that they had not been in there for quite a while out of that fear." (*Id.*, Ex. A at 83.)

Finally, plaintiff has shown injury in fact by presenting evidence that the ordinance adversely affected her health and behavior. She states that as the result of her concern about the impact of the ordinance on her business she suffered "anxiety or panic attacks" and "flashbacks" and that she "lost a lot of sleep," "smoked more cigarettes," "retreated from normal social life," and took it out "on [her] children." (Pl.'s Supplemental Decl. at 2–3.[2]) These nega-

---

**2.** Defendant initially objected to Plaintiff's Supplemental Declaration but subsequently withdrew the objection.

tive consequences constitute tangible non-economic injury.

The above harms are not conjectural or hypothetical but concrete and particularized. It is not necessary to prove the existence of a large damage claim in order to have standing. A plaintiff must only show that she has an actual stake in the outcome of her claim. This, plaintiff has done.

## B. Mootness

Even though there may be an actual and justiciable controversy at the time the litigation is commenced, if during the course of the litigation the controversy ceases to exist, the case is moot and must be dismissed for want of jurisdiction. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). If the plaintiff no longer has a personal stake in the outcome the case becomes moot. *Lewis,* 494 U.S. at 477–78, 110 S.Ct. 1249. Although the issue is subject to debate, the mootness doctrine is generally thought to be grounded in the case or controversy requirement of Article III. *Honig v. Doe,* 484 U.S. 305, 329–333, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (Rehnquist, C.J., concurring) (arguing for reconsideration of "our mootness jurisprudence").

The burden of establishing mootness rests on the party raising the issue, and the burden is a heavy one. *Special Souvenirs, Inc. v. Town of Wayne,* 56 F.Supp.2d 1062, 1079 (E.D.Wis.1999). A case properly brought in the first instance will only become moot where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). As long as the parties have a concrete interest, however small, in the outcome of the litigation the case is not moot. *Ellis v. Bhd. of Ry., Airline & S.S.*

*Clerks,* 466 U.S. 435, 443, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

Defendant has failed to demonstrate mootness under this test. Defendant argues that plaintiff's claim is moot because the offending ordinance was repealed. However, repeal did not eradicate the effects that the ordinance is alleged to have had on plaintiff. Plaintiff has presented evidence that enactment of the ordinance harmed her in various ways, and she seeks damages to compensate her for those harms. Where a repeal leaves unaffected an extant claim for monetary damages, a plaintiff continues to have a sufficient personal stake in the outcome of the controversy to defeat application of the mootness doctrine. *Special Souvenirs, Inc.,* 56 F.Supp.2d at 1079; *see also Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1519 (11th Cir.1992) (indicating that damages aspect of case not rendered moot by repeal of statute). Put differently, repeal of a law will not render a claim moot if the plaintiff is seeking relief from alleged past rather than future unconstitutional action. *Mumford v. Basinski,* 105 F.3d 264, 273–74 (6th Cir.1997). In the present case defendant's repeal of the ordinance left plaintiff's damage claim alive.

Plaintiff's request for injunctive relief, however, is moot. Defendant's repeal of the ordinance does not by itself moot the controversy, *see City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), because if it did "then any § 1983 defendant voluntarily could cease a challenged practice to thwart the lawsuit, and then return to old tricks once the coast is clear." *Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). However in this case, inasmuch as I will have to decide whether the

ordinance was constitutional because of the damage claim, it is unlikely that defendant would have reason or inclination to reinstate the ordinance without authorization. I have no reason to believe that injunctive relief would ever be required. *See id.*

I turn now to the constitutionality of the ordinance.

## IV. CONSTITUTIONALITY OF ORDINANCE

■ The Free Speech Clause of the First Amendment made applicable to states and municipalities through the Fourteenth Amendment, *Fiske v. Kansas,* 274 U.S. 380, 47 S.Ct. 655, 71 L.Ed. 1108 (1927), provides that "Congress shall make no law ... abridging the freedom of speech," U.S. Const. amend. I. The clause applies to the ordinance in the present case because nude dancing is expressive conduct entitled to protection under the First Amendment. *City of Erie v. Pap's A.M.,* 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

Plaintiff argues that the ordinance was facially unconstitutional in two respects: (1) its clothing requirement suppressed more nudity than was necessary to curb the adverse secondary effects thought to be associated with nude dancing; and (2) it curbed expressive nudity occurring in contexts where the nudity would not have caused secondary effects. I now examine these claims.

### A. Clothing Requirement

#### 1. Level of Scrutiny

In analyzing a statute or ordinance under the First Amendment it is critical to determine the appropriate level of scrutiny. *Deida v. City of Milwaukee,* 176 F.Supp.2d 859, 864 (E.D.Wis.2001). The standard chosen often determines whether the enactment is constitutional. *Id.*

■ Probably the most important factor in determining the appropriate stan-dard of review is whether the ordinance is content-based or content-neutral. *See Ark. Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 228–30, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). Content-based regulations are defined as those that distinguish favored from disfavored speech based on the ideas expressed. *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. *Gresham v. Peterson,* 225 F.3d 899, 905 (7th Cir. 2000). If not, it is content-neutral.

For example, a general ban on speech in the vicinity of a school is content-neutral whereas an analogous ban containing an exemption for speech relating to labor disputes is content-based. The former regulation requires no consideration of content before applying the ban, while the latter regulation requires consideration of whether the speech in question refers to a labor dispute before it is possible to determine if the regulation applies. *Schultz v. City of Cumberland,* 228 F.3d 831, 840–41 (7th Cir.2000) (citing *Grayned v. City of Rockford,* 408 U.S. 104, 119–20, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Police Dep't v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)).

■ Content-based regulations are presumptively invalid under the First Amendment and are subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny. *Schultz,* 228 F.3d at 840 (citing *R.A.V. v. City of St. Paul,* 505 U.S. 377, 381, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)). This rule holds true whether the regulation restricts pure speech or speech mixed with conduct. *Texas v. Johnson,* 491 U.S. 397, 407, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Strict scrutiny applies to content-based regulations be-

cause their purpose is typically to suppress free expression, contrary to the First Amendment imperative that the government may not discriminate against speech based upon its content or viewpoint. *Schultz*, 228 F.3d at 840.

Content-neutral regulations, conversely, receive "intermediate scrutiny" because their purpose is not to proscribe disfavored messages but rather to combat some other perceived evil, with speech burdened as an unintended side effect. Nevertheless, such "laws by no means receive a 'free pass' under the First Amendment." Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 3:2 (2001). This is because a sweeping content-neutral regulation, such as a complete ban on all signs as opposed to a ban on only signs with certain content, may in fact burden more speech than a narrowly tailored content-based regulation. *Id.*

■■■ An intermediate scrutiny standard that I call the "incidental burden" or "*O'Brien*" standard applies to laws regulating a general class of conduct and resulting in an unintended interference with expression. *See United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Such a restriction is constitutional if (1) the regulation is within the constitutional power of the government, (2) the regulation furthers an important or substantial governmental interest, (3) the governmental interest is unrelated to the suppression of free expression, and (4) the incidental restriction of expression is no greater than is necessary to further the government's interest. *Id.* at 377, 88 S.Ct. 1673.

■■■ Additionally, some content-based laws are treated *as if* they are content-neutral, and those are subject to a second intermediate scrutiny standard, which I call the "secondary effects" standard. *See* Christopher Thomas Leahy, *The First Amendment Gone Awry: City of Erie v. Pap's A.M., Ailing Analytical Structures, and the Suppression of Protected Expression*, 150 U. Pa. L.Rev. 1021, 1033–34 (2001). A content-based law regulating the time, place, or manner *of adult entertainment* but aimed at the secondary effects of such entertainment[3] will be analyzed as if it were content-neutral. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Under this test, a regulation passes constitutional muster if it (1) is justified without reference to the content of the regulated speech; (2) is narrowly tailored to serve a significant governmental interest in curbing adverse secondary effects; and (3) still leaves open ample alternative channels for communication. *City of Renton*, 475 U.S. at 61, 106 S.Ct. 925; *Schultz*, 228 F.3d at 845. The purpose of this rule is to balance the citizenry's First Amendment interests and government's interests unrelated to suppression of speech. *Id.*[4]

Defendant argues that the ordinance in the present case is a content-neutral regulation of a class of conduct—nudity—which should be analyzed under the *O'Brien* standard. In support of this assertion defendant cites *City of Erie* and *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), both of which involved general prohibitions on public nudity, and which were challenged

---

**3.** The secondary effects sometimes thought to result from adult entertainment include prostitution, declining property values and crime. *Wil–Kar, Inc. v. Vill. of Germantown*, 153 F.Supp.2d 982, 988 (E.D.Wis.2001).

**4.** Although courts have at times collapsed the incidental burden and the secondary effects standards, *see* Leahy, *supra*, at 1034, the standards remain distinct, having separate elements.

on First Amendment grounds by adult establishments featuring nude dancing. In both cases the Court rejected the challenge, with pluralities of the Court applying *O'Brien*. *City of Erie*, 529 U.S. at 296–97, 120 S.Ct. 1382 (plurality); *Barnes*, 501 U.S. at 565–66, 111 S.Ct. 2456 (plurality).[5]

However, in contrast to the regulations at issue in *Barnes* and *City of Erie*, the ordinance in the present case was not a general ban on nudity. Rather, like the regulation in *Schultz*, it only banned nudity as part of certain expressive conduct. *See Schultz*, 228 F.3d at 842. The *O'Brien* incidental burden standard of review selected by the pluralities in *Barnes* and *City of Erie* does not apply where a regulation expressly targets nude dancing or adult entertainment, even if the regulation is aimed at secondary effects. *Schultz*, 228 F.3d at 844–45.

The language of the ordinance makes clear that it was content-based. Section I made it illegal "to perform or engage in any live act, demonstration, dance or exhibition" in a tavern while nude. The terms "perform," "act," "demonstration," "dance," and "exhibition" make clear that the ordinance targeted expressive conduct. *See Schultz* at 843. The ordinance thus did not ban public nudity in general but prohibited only expressive nudity. And, unlike the regulations at issue in *City of Erie* and *Barnes*, the ordinance's restrictions on nude dancing were not incidental by-products of the content-neutral regulation of a larger, inclusive class of nonexpressive conduct. Rather, the ordinance applied only to certain establishments, which were characterized by their presen-

tation of performances with particular erotic content, and it was the presentation of expressive content that was the object of the ordinance. *Id.* Thus, the ordinance was content-based not content-neutral, and it appears that the *O'Brien* standard should not apply.

However, the fact that the ordinance was content-based on its face does not necessarily dictate that it must be subjected to strict scrutiny. *Id.; see DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir.1999). As noted, time, place, or manner regulations aimed at secondary effects in the area of adult entertainment are treated as if they were content-neutral and are thus subjected to the intermediate scrutiny secondary effects test. *See id.* (explaining that the Supreme Court held that this type of content-based regulation is to be "treated like content-neutral time, place, and manner regulations, not that it was content-neutral").

Time, place or manner restrictions are those that government uses to direct speech through certain avenues rather than others. *See Schultz*, 228 F.3d at 845; *see also Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 63 n. 18, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (citing *Grayned*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (addressing ban on willful making, on grounds adjacent to school, of any noise that disturbs the good order of the school session); *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) (addressing ban on demonstrations in or near a courthouse with the intent to obstruct justice); *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (addressing limitations on use of sound trucks)). A

---

**5.** In both cases, no single opinion commanded a majority of the Court. In *City of Erie*, four members of the Court concluded that *O'Brien* should apply (but also considered secondary effects a la *City of Renton* as the substantial governmental interest under

*O'Brien*'s second factor). *Id.* at 301, 120 S.Ct. 1382 (plurality). Justices Scalia and Thomas concurred in the judgment, concluding that the First Amendment did not apply at all. *Id.* at 308, 88 S.Ct. 1673 (Scalia, J., concurring).

classic time, place or manner regulation is one limiting the business hours when adult entertainment can be performed. *Schultz,* 228 F.3d at 846.

The clothing requirement in the present case was not a regulation of this type. It did not direct expressive nudity through certain avenues but rather defined the content of the expressive nudity permitted by the ordinance. Thus, it was not a time, place or manner regulation. *See id.* Therefore, it would appear that the *City of Renton* standard is also inapplicable to the present case. Rather, under traditional principles of First Amendment analysis it appears that strict scrutiny is the proper standard of review for this content-based regulation.

However, the Supreme Court has never said that strict scrutiny applies to nude dancing and, in fact, has noted that limiting erotic dancing to pasties and G-strings represents a de minimis restriction that does not unconstitutionally abridge expression. *City of Erie,* 529 U.S. at 294, 120 S.Ct. 1382 ("The requirement that dancers wear pasties and G-strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer's erotic message."); *Barnes,* 501 U.S. at 571, 111 S.Ct. 2456 ("[T]he requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic."); *see also Schultz,* 228 F.3d at 847.

But neither *City of Erie* nor *Barnes* makes clear what level of scrutiny should be applied to a content-based ordinance restricting only expressive nudity (as opposed to nudity in general). To apply a standard of review less demanding than strict scrutiny to a content-based regulation, other than a time, place or manner

restriction in the context of adult entertainment, would constitute a substantial departure from established First Amendment doctrine. *See generally* Leahy, *supra,* at 1051–57.

Nevertheless, *City of Erie* seems to suggest that intermediate rather than strict scrutiny should apply to restrictions on nude dancing even if they are content-based (perhaps because nude dancing is shielded only by the "outer ambit of the First Amendment's protection," *City of Erie,* 529 U.S. at 289, 120 S.Ct. 1382). As noted, two variations of the intermediate scrutiny standard are potentially applicable, the *City of Renton* standard and the *O'Brien* standard. The *City of Renton* test applies to reasonable time, place or manner restrictions in the adult entertainment context, and the *O'Brien* test applies to content-neutral ordinances directed at a general class of conduct that have an unintended impact on expression. While neither is a perfect fit,[6] the *City of Renton* test appears to be more appropriate because the ordinance in the present case was directed at adult entertainment and its impact on expression was not unintended. However, for reasons to be stated, the result is the same under any test.

### 2. Application of Strict Scrutiny

The ordinance in the present case does not survive strict scrutiny. Under strict scrutiny regulations may be upheld only if they are justified by compelling governmental interests, are necessary to serve such interests, and are narrowly tailored. *See, e.g., Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). Combating the secondary effects of adult entertainment may be a significant governmental interest but it has never been found to be a compelling one.

---

**6.** The best fit is strict scrutiny.

*Id.* at 120, 112 S.Ct. 501. Under strict scrutiny the ordinance was clearly unconstitutional.

### 3. Application of Intermediate Scrutiny

### a. Secondary Effects Analysis

Under *City of Renton*, a content-based restriction directed at adult entertainment may be upheld if it: (1) is justified without reference to the content of the regulated speech; (2) is narrowly tailored to serve a significant governmental interest in curbing adverse secondary effects; and (3) still leaves open ample alternative channels for communication. *City of Renton*, 475 U.S. at 47, 106 S.Ct. 925; *Schultz*, 228 F.3d at 845.

Plaintiff does not dispute that the ordinance was justified by defendant's interest in curbing the adverse secondary effects thought to result from nude dancing. The ordinance's preamble states as much. Thus, I turn to the question of whether the ordinance's clothing requirement was narrowly tailored to serve defendant's interest in curbing the secondary effects.

In analyzing whether the ordinance was narrowly tailored I keep in mind that I am applying a less-demanding standard of review than heightened scrutiny but a more demanding one than the rational basis test, which requires courts to give maximum deference to a legislative judgment. Intermediate scrutiny does not require the government to employ the least restrictive means to achieve its goal, *Ward v. Rock Against Racism*, 491 U.S. 781, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), but it *also* does not permit the government to escape *any* obligation to narrowly tailor its regulation. Smolla, *supra*, § 9:17. "Wherever the law mandates strict or intermediate scrutiny, a requirement of regulatory precision is involved; a substantial congruence must exist between the regulatory means ... and valid legislative ends."

Henry P. Monaghan, *Overbreadth*, 1981 Sup.Ct. Rev. 1, 37.

 Thus, the requirement of narrow tailoring means that when the government could adopt a narrower regulation that would significantly reduce the negative impact on expressive activity without substantially interfering with its legislative goals it must do so. *See* Smolla, *supra*, §§ 8:41, 9:17; *see also Meyer v. Grant*, 486 U.S. 414, 426, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) (holding that a ban on payment to those who collect signatures on initiative petition was not essential to protect the integrity of the initiative process, because other methods for assuring such integrity were available).

I also note that in the specific context of nude dancing, *City of Erie* strongly suggests that requiring pasties and G-strings is as far as government can go without restricting more expression than is necessary to further its interest in combating secondary effects. The Court said that:

> It also may be true that a pasties and G-string requirement would not be as effective as, for example, a requirement that the dancers be fully clothed, but the city must balance its efforts to address the problem with the requirement that the restriction be no greater than necessary to further the city's interest.

*City of Erie*, 529 U.S. at 301, 120 S.Ct. 1382.

In the present case the ordinance prohibited performers of either sex from "expos[ing] to view any portion of their genitals, pubic area, vulva, anus, anal clef or cleavage" and female dancers from "expos[ing] to view any portion of the breast below the top of the areola; or any simulation thereof." This prohibition required performers to cover considerably more of their bodies than the regulations upheld in *Barnes* and *City of Erie*.

The prohibition on exposing any portion of the breast below the top of the areola required that all of the breast below the nipple as well as the sides of the breast be covered. Dancers could not have complied with this requirement by wearing pasties or even a plunging V-neckline. Rather, they would have had to wear a garment covering most of the breast.

■ The ordinance also prohibited exposure of any portion of the "anal clef [sic] or cleavage." This prohibition was hardly a model of precise drafting. Clef is a musical term. The drafters probably meant cleft. The anal cleft is the space between the buttocks. The meaning of "cleavage" in the ordinance is unclear. The ordinance contained no definition of cleavage. If non-technical words which are not defined are used in an ordinance, they should be accorded their commonly accepted meaning. *See United States v. Cooper*, 19 F.3d 1154, 1165 (7th Cir.1994). The meaning may be established by reference to dictionary definitions. *Id.* The dictionary defines cleavage as "the depression between a woman's breasts, esp[ecially] when made visible by the wearing of a low cut dress." Merriam–Webster's Collegiate Dictionary 213 (10th ed.1999). If cleavage is defined in this way, the ordinance prohibited low-cut dresses and curtailed expressive rights to an even greater degree than already indicated.

In the ordinance, however, cleavage appears after anal cleft, suggesting that it might have been intended to refer to a part of the anatomy below the waist, although what part is unclear. In the context of narrow tailoring, the ordinance's imprecision only adds to its problems.

Additionally, the requirement that all portions of the anal cleft be covered was substantially broader than in *Barnes* and *City of Erie*. Dancers could not have complied with the requirement by wearing G-strings. G-strings do not cover all por-

tions of the anal cleft. Nor do thongs or even some bikinis. To have complied with the clothing requirement, dancers would have had to wear a garment covering most, if not all, of their hind parts.

Thus, the ordinance's clothing requirement was substantially more restrictive of the expression of erotic nudity than restrictions previously approved by the Supreme Court or the Seventh Circuit. As a practical matter, it required that dancers convey their erotic message while covering those parts of the body most associated with eroticism. The ordinance essentially required that the performers wear bathing suits. To paraphrase Judge Posner, bathing suits are for swimming not erotic expression. Richard A. Posner, *Sex and Reason* 364 (1992).

Defendant could have adopted a less intrusive regulation without substantially interfering with its legislative goals. Defendant could, for example, have imposed the same requirements approved in *Barnes* and *City of Erie*, i.e., pasties and G-strings. Nevertheless, defendant in the present case enacted an even more restrictive requirement. Yet, there is no evidence in the record that the less-intrusive requirement approved by the Supreme Court would not have curbed secondary effects equally effectively. In *Nakatomi Investments, Inc. v. City of Schenectady*, 949 F.Supp. 988, 997 (N.D.N.Y.1997), the court stated:

[T]he incremental restriction on expression must result in an incremental *furthering* of the purported governmental interest. To wit, each additional piece of required clothing must result in a further reduction in pernicious side effects. Without demanding this connection at each step, each additional layer of restriction can be legally added simply on the basis that the previous restriction was valid, until the entire ac-

tivity is banned: i.e. nude dancing is permitted so long as the dancers wear pasties and G-strings; then bathing suits; then t-shirts; then long pants and a sweater.

For the foregoing reasons, the clothing requirement was not narrowly tailored to serve defendant's interests in combating the alleged secondary effects of nude dancing. Defendant could have adopted a narrower regulation that would have significantly reduced the negative impact on expressive activity without substantially interfering with its legislative goals. By not doing so defendant violated plaintiff's rights under the First Amendment.

The third prong of the *City of Renton* standard requires that the ordinance leave open ample alternative avenues of communication. After *City of Erie* it is not clear what, if anything, this requirement means in the nude dancing context, and because I have found that the ordinance was not narrowly tailored, I need not address the question.

#### b. Incidental Burden Test

Defendant argues that *O'Brien* supplies the applicable standard of review, thus I will also assess how the clothing requirement fares under that incidental burden standard. *O'Brien* requires that when government incidentally restricts expression as an unintended by-product of a regulation of a general class of conduct it may not restrict more expression than is essential to further the governmental interest at stake. *City of Erie*, 529 U.S. at 295, 120 S.Ct. 1382. Because the ordinance in the present case required more clothing than the regulations in *City of Erie* and *Barnes*, it restricted more expressive conduct than those cases found necessary to further the government's interest.

Moreover, the *O'Brien* requirement that any restriction on expression be no greater than is essential to further the government's interest is, if anything, *more* demanding of government than the *City of Renton* requirement that a restriction on adult entertainment be narrowly tailored to serve a significant governmental interest. *Cf.* Smolla, *supra*, § 9:17. Thus, my analysis of why the clothing requirement was not narrowly tailored applies equally to the question of whether it constituted a greater restriction on nudity than was essential to furtherance of the government's interest in combating secondary effects. Because it restricted more expressive nudity than was necessary, the ordinance failed to satisfy the *O'Brien* standard.

### B. Restrictions on Expressive Nudity Not Associated With Secondary Effects

Plaintiff alternatively argues that the ordinance was unconstitutionally overbroad because it restricted expressive nudity not associated with secondary effects, including non-live nudity, non-erotic nudity, nudity in the context of serious art, nudity in venues other than taverns, and nude dancing occurring only infrequently. In the context of adult entertainment, the overbreadth doctrine guards against the suppression of protected speech unconnected to the negative secondary effects cited as the legislative justification. *Schultz*, 228 F.3d at 849. When the government restricts speech not associated with harmful secondary effects, then the government cannot be fairly said to be regulating with those secondary effects in mind, and the regulation extends beyond its legitimate reach. *Id.* Thus, an enactment that purports to be aimed at secondary effects but which also covers a substantial amount of expressive activity that cannot plausibly be believed to cause such

effects will be invalidated as overbroad. *Id.*

 Before facial invalidation of a law is appropriate the overbreadth must be substantial. *Schultz,* 228 F.3d at 848. Further there must be no readily available limiting construction capable of trimming the unconstitutional application of the statute, and the unconstitutional applications must be real and substantial in relation to the regulation's plainly legitimate sweep. *Id.; see, e.g., Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129–30, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). I now turn to the applications of the ordinance that plaintiff alleges were not associated with harmful secondary effects.

### 1. Non-live Expressive Nudity

Plaintiff argues that the ordinance was overbroad because it restricted non-live expressive nudity even though it contained no finding that such activity caused harmful secondary effects. The ordinance banned nudity in "any live act, demonstration, dance, or exhibition." The word "live" clearly modified "act." The question raised by plaintiff's contention is whether it also modified "demonstration" and "exhibition." If not, the ordinance prohibited non-live nudity.

I construe the ordinance consistently with common English usage. *Cooper,* 19 F.3d at 1165. According to common English usage "single word adjectives ... *usually appear immediately before the word they modify.*" Porter G. Perrin & George H. Smith, *Handbook of Current English* § 25.2 (1955). I found no text suggesting that it is common to use a single word adjective to modify separate nouns occurring in a series.

 In the present case the word "live" appeared before "act" but was not repeated before "demonstration" or "exhibition." Thus, it is reasonable to construe "live" as modifying only "act" and not the other nouns in the sentence. So construed, the ordinance prohibited non-live demonstrations and exhibitions involving partial nudity. Thus, the ordinance would have prohibited exhibitions of works of art depicting nudity, such as Michelangelo's "David." Such exhibitions could not plausibly be believed to cause secondary effects.

Even if I assume, however, that "live" modified "demonstration," "dance" and "exhibition" as well as "act," as described below the ordinance would nevertheless have prohibited speech not associated with secondary effects.

### 2. Non–Erotic Expressive Nudity

For instance, assuming that the ordinance banned only live nudity, the ordinance would have prohibited non-erotic nudity. It would, for example, have prohibited demonstrations for all-female audiences of how to conduct a self-examination for breast cancer or demonstrations sponsored by the La Leche League showing how to breast feed correctly.

### 3. Expressive Nudity in the Context of "Serious Art"

Again, assuming that the ordinance banned only live nudity, it nevertheless would have prohibited "serious" artistic performances that included nudity. For example, not all dancing involving nudity or partial nudity is of the adult entertainment variety. As Judge Posner has pointed out, "'Modern dance,' a ballet offshoot pioneered by, among others, the erotic dancer Isadora Duncan, has long been partial to nudity." *Miller v. Civil City of S. Bend,* 904 F.2d 1081, 1090 (7th Cir.1990) (Posner, J., concurring). Nudity in the context of "serious" art such as modern dance would not have caused the secondary effects with which the ordinance was concerned.

#### 4. Expressive Nudity in Licensed Premises Other Than Taverns

The ordinance prohibited nudity in "any establishment licensed by the Town of Florence to sell alcohol beverages." [7] Plaintiff contends (and defendant does not dispute) that establishments licensed by defendant to sell liquor include not only bars and taverns but also hotels and restaurants. Further, with respect to hotels, the ban on expressive nudity covered not only the room where liquor was served but any room "on the premises." Thus, the ordinance prohibited expressive nudity occurring in hotel conference and meeting rooms and also in individual guest rooms. It banned the showing of a movie or television program in a hotel room if the movie or program included nudity. The ordinance also prohibited private acts of expressive nudity conducted in a hotel room, including a striptease by one spouse for another. Once again, expressive nudity of this type is not associated with secondary effects.

#### 5. Infrequent Nude Dancing

The prohibition on nude dancing made no exception for performances occurring only once or twice a year as, for example, during a private party such as a bachelor or bachelorette party. Nude dancing occurring so infrequently could not plausibly be believed to cause secondary effects such as crime and declining property values. In *Schultz* it was significant that the prohibition on nude dancing extended only to establishments that "regularly" featured it. *Schultz*, 228 F.3d at 850. The ordinance in

the present case included no similar limitation.

#### 6. Conclusion

As has been shown, the ordinance prohibited a substantial amount of expressive nudity not associated with secondary effects. It banned non-live expressive nudity including television programs and art exhibitions; non-erotic expressive nudity such as breast feeding demonstrations; expressive nudity occurring in serious art as, for example, modern dance; expressive nudity occurring in such places as private hotel rooms; and nude dancing occurring only infrequently such as at a bachelor or bachelorette party. The ordinance therefore covered a considerable amount of expressive nudity unconnected to secondary effects. Moreover, its unconstitutional applications were real and substantial. Further, it did not lend itself to the easy identification of constitutionally proscribable conduct. Thus, it was substantially overbroad. *See id.* at 849.

In *Schultz*, the court saved an ordinance that otherwise would have been invalidated for overbreadth by construing the word "regularly" to mean "always." *Id.* at 850. This narrowing construction limited the reach of the regulation to nude performances in the context of adult entertainment and eliminated from coverage expressive nudity not associated with secondary effects. In the present case the ordinance covered a variety of kinds of expressive nudity not associated with secondary effects and contained no language

**7.** Neither party has suggested that the Twenty-first Amendment affects the analysis of the ordinance in the present case. *See, e.g., California v. LaRue,* 409 U.S. 109, 118–19, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). In *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 516, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), the Supreme Court held "that the Twenty-first Amendment does not qualify the

constitutional prohibition against laws abridging freedom of speech embodied in the First Amendment," and disavowed *LaRue* to the extent it held otherwise. Thus, the First Amendment analysis is the same notwithstanding that the ordinance regulated nude dancing only in places where alcohol was served.

by which its scope could be comparably narrowed. *See Wil–Kar,* 153 F.Supp.2d at 993. Thus, the ordinance violated the First Amendment due to its substantial overbreadth.

I turn, then, to what this finding of a constitutional violation means for purposes of plaintiff's § 1983 claim.

## V. SECTION 1983 CLAIM

Plaintiff moves for summary judgment on the issue of liability and defendant moves for summary judgment on both liability and damages.

### A. Liability

■ A plaintiff can establish liability under § 1983 if she can show that she was deprived of rights guaranteed by the Constitution or laws of the United States by a person acting under color of state law. *Pfeifer v. City of W. Allis,* 91 F.Supp.2d 1253, 1257 (E.D.Wis.2000). In the present case it is not disputed that defendant acted under color of state law. Further, plaintiff has shown that she has standing to challenge the ordinance, and that it was unconstitutional. Thus, she has established that she was deprived of a constitutional right.

Defendant argues that a plaintiff in a § 1983 overbreadth suit cannot establish that she was deprived of a constitutional right unless she shows that the activity that she engaged in was constitutionally protected. *See Mentzel v. Gilmore,* 54 F.Supp.2d 896, 899 (E.D.Wis.1999) (citing *DiGiambattista v. Doherty,* 897 F.Supp. 649, 656 (D.Mass.1995); *Noelker v. City of Kansas City, Mo.,* 802 F.Supp. 268, 270 (W.D.Mo.1992); *Hearn v. Hudson,* 549 F.Supp. 949, 954 (W.D.Va.1982)). In the present case, however, plaintiff was engaged in constitutionally protected activity, i.e., the presentation of erotic dancing. Thus, *Mentzel* does not bar plaintiff from obtaining relief.

Further, the reasoning in the cases cited in *Mentzel* is unpersuasive. Section 1983 does not create special obstacles for plaintiffs with First Amendment overbreadth claims. Overbreadth plaintiffs like any others have the right not to be burdened by unconstitutional ordinances. Like any other, a § 1983 overbreadth plaintiff can prove liability by showing that she was actually injured as the result of an unconstitutional regulation. The fact that an overbreadth plaintiff's own conduct was not privileged may be relevant to such issues as damages, but nothing in § 1983 or the overbreadth doctrine suggests that it automatically bars recovery. A judgment that a regulation is overbroad is simply a disposition of a litigant's claim that the First Amendment has been violated. *See* Monaghan, *supra,* at 37; *see also* Note, *The First Amendment Overbreadth Doctrine,* 83 Harv. L.Rev. 844, 848 (1970) (stating that as a theoretical matter an overbreadth plaintiff is asserting her own right not be burdened by an unconstitutional rule of law, although the claim does not depend on the privileged character of her own conduct).

In any event, plaintiff has established that she was deprived of a constitutional right. Therefore, her motion for summary judgment on the issue of liability will be granted.

### B. Damages

I now turn to defendant's motion for summary judgment on the issue of damages. I draw all inferences in favor of plaintiff, the non-moving party, and will grant the motion only if no reasonable juror could award any compensatory damages to plaintiff.

■ Under § 1983, damages are determined according to principles derived from the common law of torts. *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 306,

106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Plaintiffs may be awarded damages for out-of-pocket losses and also for injuries such as impairment of reputation, personal humiliation, and mental and emotional distress. *Id.*

In the present case plaintiff has presented sufficient evidence of compensable injury to be entitled to a jury trial on the issue of damages. She has presented evidence that Tami Goyen had agreed to buy her business and that passage of the ordinance interfered with the planned sale. She testified at deposition:

Q. Okay. So why don't you tell me, in your own words, what your agreement with Tami was.

A. The short of it was that we agreed upon this price, her knowing what the business brought in after she's been working there for so many years. We agreed on the rate and the monthly payments and that just to have a basic write-up of a contract that the accountant would prepare, and she would have an opportunity to bring it to a lawyer to oversee, and that before signing, if she had any disputes, we would make verbal agreements on the changes .... And, of course, once she found out about the license, we didn't see any use on going any further at that time with the paperwork or anything.

(Janaszek Aff. in Opp'n to Pl.'s Mot. for Summ. J., Ex. A at 77.)

Goyen testified similarly:

Q. Okay. So you had a verbal agreement with respect to how this transaction was gonna take place?

A. Yes.

Q. And the verbal agreement provided for a purchase price of $360,000, correct?

A. Yes.

Q. Okay. Ten thousand dollars of the $360,000 was going to be paid up front?

A. Yes. Yes. That's it.

Q. And you understood that that was to be in lieu of a security interest being taken in your home?

A. Yes.

Q. Okay. And so you—it was your understanding that you and the—and Raissa Clarkson were operating with a verbal agreement, is that correct?

A. On that, yes. Only on that down payment.

(*Id.,* Ex. B at 65.) Goyen also testified that she remained and she remains interested in purchasing the tavern but would now seek "a lower price and a lawyer" before entering into a deal. (*Id.* at 75.)

Based on the foregoing testimony a reasonable jury could find that plaintiff suffered harm as the result of the enactment of the ordinance. Drawing all inferences in plaintiff's favor, she has presented evidence that she was damaged as a result of the ordinance's interference with the anticipated sale of the business. She is entitled to a jury determination of whether and to what extent she suffered a loss.

Plaintiff also presented evidence that as a result of the passage of the ordinance she suffered emotional distress:

4. When the Ordinance was passed, I began to worry that I would lose my livelihood and I began to suffer flashbacks fearing that I would lose everything and be back to living day to day with creditors at my door and on the phone almost constantly.

5. I found myself taking my stress from the ordinance out on my children, and this was very saddening to me.

6. I felt I would have anxiety or panic attacks when we were afraid I would lose the business to the ordinance. I lost a lot of sleep between the time I heard of the ordinance and the time I retained counsel. I smoked more cigarettes, and believe I lost weight.

7. I retreated from normal social life, started not answering the phone sometimes, and avoided going out too much.

(Pl.'s Supplemental Decl. at 2.)

Based on the foregoing statements, a reasonable jury could conclude that plaintiff was entitled to damages for emotional distress. At this point, issues of credibility must be resolved in her favor. Thus, defendant's motion for summary judgment on the issue of damages must be denied.

 Moreover, a plaintiff who has been deprived of a constitutional right is entitled to nominal damages even without proof of actual injury. *Hessel v. O'Hearn,* 977 F.2d 299, 302 (7th Cir.1992) (any violation of constitutional rights entitles a prevailing plaintiff to at least nominal damages) (citing *Memphis Cmty Sch. Dist.,* 477 U.S. at 308 n. 11, 106 S.Ct. 2537; *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). In *Carey,* the Supreme Court set nominal damages at $1.00. Thus, regardless of whether she is entitled to compensatory damages, plaintiff may obtain nominal damages.

Finally, I note that a § 1983 plaintiff may be entitled to recover what are called "presumed" damages—compensatory damages awarded without proof of injury. In *Hessel,* the court stated that presumed damages "may be recoverable when substantive constitutional rights, such as the right to freedom of speech, or the right to be free from unreasonable searches and seizures, are infringed." *Hessel,* 977 F.2d

at 301. However, it is unnecessary to address this issue at this time.

## VI. CONCLUSION

Therefore,

**IT IS HEREBY ORDERED** that defendant's motion to strike (docket # 26) is **DENIED AS MOOT**.

**IT IS ORDERED** that defendant's motion for summary judgment (docket # 26) is **DENIED**.

**IT IS ORDERED** that plaintiff's motion for summary judgment on the issue of liability (docket # 12) is **GRANTED**.

**FINALLY, IT IS ORDERED** that a telephonic conference shall be held on **May 15, 2002** at **11:00 a.m.** to schedule dates for a final pretrial conference and trial.