**MDK, INC., Plaintiff,**

v.

**VILLAGE OF GRAFTON, Defendant.**

**No. 03–C–0026.**

United States District Court,
E.D. Wisconsin.

Aug. 7, 2003.

Jeff Scott Olson, Madison, WI, for for Plaintiff.

Charles Bohl, Nathan Fishbach and Jennifer Kopp, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff MDK, Inc. ("MDK"), owner of the Luxury Box, a tavern in the Village of Grafton ("Grafton"), brings this action under 42 U.S.C. § 1983 challenging the constitutionality of Grafton's ordinance regulating adult-oriented establishments, § 9.35 of the municipal code. Plaintiff wishes to offer erotic nude or semi-nude dance entertainment, a form of expression protected by the First Amendment. *See, e.g., Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Under the ordinance, an adult-oriented establishment must obtain a license and is subject to various time, place and manner restrictions, including a prohibition on locating within 500 feet of residential dwellings.

Plaintiff argues that Grafton's ordinance is unconstitutional on its face. It contends that the licensing provisions of the ordinance constitute a prior restraint in violation of the First Amendment because they: (1) vest unbridled discretion in Village officials to unreasonably delay judicial review of adverse licensing decisions and (2) contain no safeguards ensuring a prompt judicial decision once judicial review is underway. As relief, plaintiff requests a preliminary injunction barring enforcement of the ordinance. Grafton contends that plaintiff lacks standing to challenge the ordinance, and, alternatively, that even if the review procedures are unconstitutional they are severable from the rest of the ordinance, which is independently enforceable.

### II. STANDING

#### A. General Principles

 Under Article III of the Constitution, federal judicial power extends only to "cases" or "controversies." U.S. Const. art. III. The "case or controversy" requirement ensures that federal courts will hear only justiciable or live cases. *Crosetto v. State Bar of Wis.,* 12 F.3d 1396, 1403 (7th Cir.1993). Federal courts must be careful to decide only live cases in order to avoid exceeding their role in the system of separation of powers that underlies our constitutional structure. *See Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The party seeking to invoke federal jurisdiction bears the burden of proving justiciability and must support its claim in the same way as any other matter on which the party bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. *Alliant Energy Corp. v. Bie,* 277 F.3d 916, 919 (7th Cir.2002).

 The doctrine of standing focuses on justiciability at the time the action is commenced. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The analysis focuses not on the claim itself but on the party bringing the challenge. *Clarkson v. Town of Florence,* 198 F.Supp.2d 997, 1002 (E.D.Wis.2002). The standing requirement has both "constitutional" and "prudential" components. *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The constitutional requirements are those that must be satisfied in every case and cannot be modified by Congress; they are the "irreducible constitutional minimum" of standing.[1] *Id.* These requirements are

---

1. In contrast, the prudential requirements can be modified by Congress or the courts. *Bennett,* 520 U.S. at 162, 117 S.Ct. 1154. They include (1) the requirement that a party assert only his or her own rights and not those of a third party not before the court; (2) the bar against "generalized grievances"; and (3) the requirement that the claim raised be within the zone of interests protected by the statute

that the plaintiff demonstrate (1) that he has suffered "injury in fact"; (2) that the injury is "fairly traceable" to the actions of the defendant; and (3) that the injury will likely be redressed by a favorable decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

## B. Plaintiff's Standing

Grafton objects to plaintiff's standing on three grounds. First, it argues that plaintiff lacks standing because it has not applied for a license and thus failed to test the actual operation of the ordinance. Because plaintiffs bringing facial challenges to licensing ordinances are not required to first apply for licenses, Grafton's argument is, in effect, that plaintiff may not challenge the ordinance on its face. Second, Grafton argues that plaintiff has not suffered injury in fact. Third, Grafton argues that, even if plaintiff has suffered an injury, such injury is not redressable by the relief requested. I address each contention in turn.

### 1. Whether Plaintiff May Bring a Facial Challenge

■ A constitutional challenge to a law can take one of two forms, "facial" or "as applied." Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement*, 48 Am. U.L.Rev. 359, 360 (1998). A facial challenge alleges that the law cannot constitutionally be applied to anyone, no matter what the facts of the particular case may be. *Id.; see also Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 n.

10, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (noting that facts concerning how law was applied to plaintiff were irrelevant to facial challenge). An "as applied" challenge, on the other hand, alleges that the law is unconstitutional only insofar as it is applied to the specific facts of the case under review. Isserles, *supra*, at 360.

■ A successful facial challenge results in the complete invalidation of the law in question. Further, such challenges typically rest upon a finding that the rights of others not before the court are implicated by the law. *See, e.g., Broadrick v. Okla.*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Facial challenges therefore

> implicate[ ] a relatively robust role for the federal courts in reviewing legislative enactments. Such a role is in substantial tension with core principles underpinning Article III courts that require resolution of concrete disputes, general deference to the legislative process, and determination of constitutional questions as a matter of last resort and on a limited basis.

Isserles, *supra*, at 361. Thus, facial challenges are appropriate only in extraordinary circumstances. *Id.; see also Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (holding that facial invalidation is manifestly strong medicine to be employed sparingly and only as a last resort).

■ However, the Supreme Court has held that when laws regulate freedom of expression, facial challenges are often appropriate. This is so because "First Amendment freedoms need breathing space to survive," *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405

in question. Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.1 (4th ed.2003). The pruden-

tial requirements are not at issue in this case.

(1963), and the very existence of such laws may stifle the expressive activity of others not before the court. *Forsyth County*, 505 U.S. at 129, 112 S.Ct. 2395. Therefore, the ordinary rules of standing are relaxed in such cases. *Id.; Broadrick*, 413 U.S. at 612, 93 S.Ct. 2908.

■ In the First Amendment context, there are two different ways in which a law may be invalidated on its face: (1) if the law is overbroad or (2) if the law is unconstitutional in every application. *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Grafton characterizes plaintiff's facial attack as an overbreadth challenge. However, plaintiff's argument is not that the ordinance is overbroad, but rather that it is unconstitutional in every application. The two challenges are distinct, particularly in the context of licensing provisions.

■ A law is overbroad when, although it constitutionally regulates some conduct, it sweeps so broadly that it also covers a substantial amount of constitutionally protected conduct. *See Broadrick*, 413 U.S. at 611–15, 93 S.Ct. 2908; *Wil-Kar, Inc. v. Vill. of Germantown*, 153 F.Supp.2d 982, 990 (E.D.Wis.2001). Overbroad statutes may be facially attacked because their very existence may discourage persons from engaging in protected expression out of fear of prosecution under the law. *Broadrick*, 413 U.S. at 612, 93 S.Ct. 2908.

■ A law is unconstitutional in every application when it does not constitutionally regulate any speech. *Taxpayers for Vincent*, 466 U.S. at 796, 104 S.Ct. 2118. Facial challenges under the First Amendment to laws of this type are permitted because "any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas." *Id.* at 797, 104 S.Ct. 2118. Laws that have been found to be unconstitutional in every application include: (1) laws that are content-based, *see, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377, 381, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); (2) laws that are enacted for the impermissible purpose of suppressing speech, *see Taxpayers for Vincent*, 466 U.S. at 797 n. 14, 104 S.Ct. 2118 (1984) (listing *Stromberg v. Cal.*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), and *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), as cases involving facial invalidations resting on this ground); and (3) laws that confer unbridled discretion on administrative officials, *see, e.g., Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). *See generally,* Isserles, *supra*, at 393.

■ Grafton's ordinance requires those who wish to offer erotic entertainment to first obtain a license; therefore, it constitutes a "prior restraint" on protected expression. *See Forsyth County*, 505 U.S. at 130, 112 S.Ct. 2395. There is a "heavy presumption" against prior restraints, which will be upheld only if they meet certain constitutional requirements. *Id.* One of those requirements is that the law "not delegate overly broad licensing discretion to a government official." *Id.*

■ Plaintiff claims that because the Grafton ordinance confers unbridled discretion on administrative officials, the ordinance constitutes a prior restraint that is unconstitutional in every application. Where a claim is made that a licensing provision vests unbridled discretion in a government official, it is well settled that a person who will be affected by the provision has standing to bring a facial challenge without first applying for a license. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Lakewood*, 486 U.S. at 755–56, 108 S.Ct. 2138; *Freedman v. Md.*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). This rule is necessary to prevent the two evils

that flow from prior restraints—the risk of self-censorship and the difficulty of distinguishing, on a case by case basis, between the legitimate use of the restraint and the illegitimate abuse of censorial power. *Lakewood*, 486 U.S. at 757–59, 108 S.Ct. 2138.

A prior restraint allowing the exercise of unbridled discretion creates a risk of self-censorship because, in order to obtain a license, the potential licensee may alter the content of his or her speech to coincide with the preferences of the licensor. *Id.* at 757–58, 108 S.Ct. 2138. Self-censorship is an injury that "is immune to an 'as applied' challenge, for it derives from the individual's own actions, not an abuse of government power." *Id.* at 757, 108 S.Ct. 2138.

A prior restraint allowing unbridled discretion also makes it difficult for courts to distinguish between the legitimate use of discretion and censorship. Where licensing provisions lack standards that minimize a licensor's discretion, courts may have no way of determining why the licensor made a particular decision. *Id.* at 758, 108 S.Ct. 2138. In contrast, where there are standards, courts may more easily discern whether the licensor is discriminating against disfavored speech. *Id.* Thus, where a law is alleged to allow unbridled discretion, it may effectively be tested only by means of a facial challenge.

Plaintiff also alleges that Grafton's ordinance does not ensure prompt judicial review of adverse decisions. The Supreme Court has recognized that if a licensing scheme lacks certain safeguards, including the availability of prompt judicial review of adverse decisions, it vests unbridled discretion in the licensor even if he or she lacks discretion to grant or deny a license based on the content of the licensee's expression. *See FW/PBS*, 493 U.S. at 223–24, 110 S.Ct. 596. Put differently, the ability to delay judicial review is itself a form of unbridled discretion. This is so

because a licensing scheme that allows an official to delay judicial review creates the risk that the official will use delay to suppress protected expression by postponing judicial review to a point where it may be "too little and too late." *Freedman*, 380 U.S. at 57, 85 S.Ct. 734.

In sum, because plaintiff alleges that the ordinance confers unbridled discretion on government officials and does not provide for prompt judicial review, under the *FW/PBS, Inc., Lakewood*, and *Freedman* line of cases, plaintiff may bring a facial challenge to the ordinance notwithstanding its failure to apply for a license. Therefore, Grafton's argument that plaintiff lacks standing because of such failure must be rejected.

### 2. Injury In Fact

Grafton next argues that plaintiff lacks standing because it fails to demonstrate injury in fact. The injury in fact requirement means that the plaintiff must have an actual stake in the outcome that goes beyond intellectual curiosity. *Clarkson*, 198 F.Supp.2d at 1002. The requirement is not a demanding one. *Id.* Provided that a litigant can establish the existence of a distinct and palpable injury, even a minor injury can satisfy the case or controversy requirement. *Id.* at 1003; *see also ACLU v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir.1986) (holding that plaintiffs' averment that they altered their normal routes of travel to avoid viewing a lighted cross displayed on public property satisfied injury in fact requirement). In the First Amendment context, the injury in fact requirement is particularly relaxed. *See Deida v. City of Milwaukee*, 192 F.Supp.2d 899, 904–05 (E.D.Wis.2002) (collecting cases).

Grafton argues that plaintiff fails to establish lost profits due to the ordinance. However, a plaintiff's injury need

not be economic. In the present case, plaintiff suffered "injury in fact" merely by being subject to the ordinance. Because of the licensing provisions (as well, perhaps, as the time, place and manner restrictions in the ordinance), plaintiff is prohibited from offering erotic entertainment. If enforcement of the ordinance were enjoined, plaintiff would be free to engage in erotic expression. Thus, the ordinance burdens plaintiff by preventing it from engaging in protected conduct. This burden is sufficient to meet the undemanding injury in fact requirement in the First Amendment context. *Cf. Lakewood,* 486 U.S. at 753–55, 108 S.Ct. 2138 (finding that mere burden of having to apply for license before engaging in conduct protected by First Amendment was sufficient to confer standing).

### 3. Redressability

■ Finally, Grafton argues that plaintiff lacks standing because its injury is unlikely to be redressed by a favorable judicial decision. Grafton contends that, even if plaintiff prevailed on its challenge to the licensing provisions, it would violate the ordinance's prohibition on adult entertainment within 500 feet of a residential dwelling because two apartments are located upstairs of the Luxury Box.

Grafton's argument ignores the fact that in addition to challenging the licensing provisions, plaintiff also argues that such provisions are not severable from the rest of the ordinance. As a result, if plaintiff were to prevail both on its challenge to the licensing provisions and on its argument against severability, the entire ordinance would fall.[2]

Thus, for the reasons stated, plaintiff has standing to obtain a preliminary injunction preventing Grafton from enforcing the ordinance. I turn now to that request.

## III. PRELIMINARY INJUNCTION

### A. Preliminary Injunction Standard

■ To obtain a preliminary injunction, plaintiff must show: (1) a reasonable likelihood of success on the merits; (2) that it has no adequate remedy at law; (3) that it will suffer irreparable harm if an injunction does not issue; (4) that the threatened injury it faces outweighs the injury defendant will suffer if the injunction is granted; and (5) that an injunction is in the public interest. *JAK Prods., Inc. v. Wiza,* 986 F.2d 1080, 1084 (7th Cir.1993). Because I find that plaintiff is unlikely to succeed on the merits of its claim that the entire ordinance is invalid, I need not address the other requirements.

### B. Likelihood of Success on the Merits

Plaintiff seeks to invalidate the entire ordinance, not just the licensing provisions. In order to succeed, plaintiff must establish: (1) that the licensing provisions are unconstitutional; and (2) that such provisions are not severable from the other sections of the ordinance. Thus, if it is likely that any part of the ordinance is severable, plaintiff would be unlikely to succeed on the merits of its claim that the entire ordinance is unconstitutional. As explained below, it is likely that the licensing provisions are severable, and that, therefore, plaintiff is unlikely to succeed in invalidating the entire ordinance. As a

---

**2.** As I explain below, however, the ordinance is severable and plaintiff is, therefore, not entitled to a preliminary injunction against enforcement of the entire ordinance. But this does not mean that plaintiff lacks standing. The third constitutional standing requirement

is that plaintiff's injury will likely be redressed by a *favorable* decision. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. If plaintiff's injury is redressable by a favorable ruling, plaintiff has standing regardless of whether it actually obtains such a ruling.

result, it is unnecessary to address the constitutionality of the ordinance's licensing provisions at this time.

### 1. Law of Severability

▮▮▮ Whether an invalid portion of an ordinance should be severed from other valid portions, or the entire ordinance struck down, is a question of state law. *Lakewood,* 486 U.S. at 772, 108 S.Ct. 2138. Under Wisconsin law, severability is a question of legislative intent. *City of Madison v. Nickel,* 66 Wis.2d 71, 78–79, 223 N.W.2d 865 (1974); *City News & Novelty, Inc. v. City of Waukesha,* 231 Wis.2d 93, 119–20, 604 N.W.2d 870 (Ct.App.1999). As stated in *Nickel,*

> If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional.

66 Wis.2d at 78–79, 223 N.W.2d 865. A severability clause, while not controlling, is "entitled to great weight" in determining whether the valid and invalid portions of the statute are severable. *Id.* at 80, 223 N.W.2d 865; *see also Schultz v. City of Cumberland,* 228 F.3d 831, 853–54 (7th Cir.2000) (determining that invalid part of Wisconsin ordinance regulating sexually oriented businesses was severable from the remainder because of the ordinance's "robust severability clause").

### 2. Severability of Licensing Provisions of Ordinance

▮▮▮ Grafton argues that even if the administrative review procedures are unconstitutional, those procedures are severable from the remainder of the ordinance. To the extent that Grafton means to argue that, even if the administrative review provisions are unconstitutional, it may, nevertheless, enforce the remaining *licensing* provisions, its argument is clearly without merit. If the administrative review provisions are unconstitutional, the entire licensing scheme must fall because it operates as a prior restraint that lacks adequate procedural safeguards. However, in addition to the licensing scheme, the ordinance contains other regulatory provisions that are not prior restraints. For example, the ordinance prohibits the involvement of children in adult businesses, and it contains several location restrictions. Grafton also argues that, even if the licensing provisions are unconstitutional, they are severable from these time, place and manner restrictions.

I conclude that Grafton intended the licensing provisions of the ordinance to be severable from the remainder of the ordinance. Like the ordinance in *Schultz,* Grafton's ordinance contains a "robust" severability clause.[3] 228 F.3d at 853–54. While the presence of a severability clause is not conclusive on the question of intent, it is significant. *Nickel,* 66 Wis.2d at 80, 223 N.W.2d 865. Further, there are two

---

**3.** The severability clause states:

*9.35.250 Severability.*

Each section and provision of this Ordinance is hereby declared to be independent divisions and subdivisions and, not withstanding any other evidence of legislative intent, it is hereby declared to be the controlling legislative intent that if any provisions of said Ordinance, or the application thereof to any person or circumstance is held invalid, the remaining sections or provisions and the application of such sections and provisions to any person or circumstances other than those to which it is held invalid, shall not be affected thereby, and it is hereby declared that such sections and provisions would have been passed independently of such section or provision so known to be invalid.

Grafton, Wis., Ordinances § 9.35.250.

additional bases for finding the ordinance severable.

First, the licensing provisions of the ordinance operate independently of the ordinance's other sections. If the licensing provisions were struck down, the balance of the ordinance would remain intact. A sexually oriented business could operate without a license but still could not, for example, locate within 500 feet of a residential dwelling or church, § 9.35.160, offer totally nude entertainment, § 9.35.190(a), or admit minors, § 9.35.200. Second, it is reasonable to assume that, even without the licensing provisions, Grafton would have enacted the time, place and manner restrictions as part of its zoning scheme. Grafton would likely rather forego its licensing provisions in favor of its non-licensing restrictions than subject adult businesses to no regulation whatsoever.

▆▆▆ Thus, even if the licensing provisions of the ordinance are unconstitutional, they are severable from the remainder of the ordinance. The parties have not argued and I have no occasion to consider whether the time, place and manner restrictions in Grafton's ordinance pass constitutional muster. For now, it is enough to note that municipalities may enact carefully crafted time, place and manner restrictions on adult entertainment. *See, e.g., Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Consequently, MDK is unlikely to prevail on the merits of its claim that the entire ordinance is unenforceable.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion for a preliminary injunction is **DENIED**.