MDK, INC., Plaintiff,

v.

**VILLAGE OF GRAFTON, Defendant.**

**No. 03–C–0026.**

United States District Court,
E.D. Wisconsin.

Nov. 18, 2004.

---

Jeff Scott Olson, Madison, WI, for Plaintiff.

1. I previously denied plaintiff's request to preliminarily enjoin enforcement of the ordinance. *See MDK, Inc. v. Village of Grafton*, 277 F.Supp.2d 943 (E.D.Wis.2003).

2. Section 9.35.020(c) defines an "adult cabaret" as:

> a nightclub, dance hall, bar, restaurant, or similar commercial establishment which regularly features:
> 1. persons who appear semi-nude; or
> 2. live performances that are characterized by the exposure of "specified sexual activities" or "specified anatomical areas"; or
> 3. films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by the exhibition or display of "specified sexual activities" or "specified anatomical areas".

Jennifer J. Kopp, Barbara Janaszek, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff MDK, Inc. ("MDK") brings this action under 42 U.S.C. § 1983 alleging that defendant Village of Grafton's ordinance regulating sexually oriented businesses, Ch. 9.35, is facially invalid under the First Amendment. Plaintiff contends that the ordinance effectively prohibited it from offering erotic dancing at a tavern that it owned in the Village and that as a result it is entitled to damages. Before me now are the parties' cross-motions for summary judgment on the issue of liability.[1]

### I. THE ORDINANCE

Under Ch. 9.35, "sexually oriented businesses" include "an adult arcade, adult bookstore, adult video store, adult cabaret, adult motel, adult motion picture theater, adult theater, escort agency, or sexual encounter center." § 9.35.020(v). Businesses subject to the ordinance must obtain licenses to operate, may operate only in specified locations and must comply with other requirements. Had plaintiff offered erotic dancing, it would have been subject to the ordinance as an "adult cabaret."[2]

Section 9.35.020(t) of the ordinance defines "semi-nude" as

> the showing of the female breast below a horizontal line across the top of the areola at its highest point or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the female human breast, exhibited by a dress, blouse, skirt, leotard, bathing suit, or other wearing apparel, provided the areola is not exposed in whole or in part.

Section 9.35.020(w) defines "specified anatomical areas" as:

> 1. the human male genitals in a discernibly turgid state, even if completely and opaquely covered; or
> 2. less than completely and opaquely covered human genitals, pubic region, buttocks or a female breast below a point immediately above the top of the areola.

Defendant states that prior to enacting Ch. 9.35, its board members reviewed studies concerning the adverse secondary effects of adult entertainment. Defendant has not made such materials part of the record but states that they establish a correlation between adult entertainment establishments and negative secondary effects such as unlawful sexual activity, sexually transmitted diseases, urban blight, increased crime and reduced property values.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.* In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). When both parties have moved for summary judgment, both are required to show that no genuine issues of

fact exist, taking the facts in the light most favorable to the party opposing each motion. If issues of fact exist, neither party is entitled to summary judgment. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983).

## III. DISCUSSION

■ The Free Speech Clause of the First Amendment made applicable to states and municipalities through the Fourteenth Amendment, *Fiske v. Kansas,* 274 U.S. 380, 47 S.Ct. 655, 71 L.Ed. 1108 (1927), provides that "Congress shall make no law ... abridging the freedom of speech. U.S. Const. amend. I. The Clause applies to Ch. 9.35 because erotic dancing is a form of expression protected by the First Amendment." *See, e.g., City of Erie v. Pap's A.M.,* 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schultz v. City of Cumberland,* 228 F.3d 831, 839 (7th Cir.2000).

Plaintiff challenges Ch. 9.35 insofar as it regulates adult cabarets and also challenges its clothing restrictions, locational requirements and licensing scheme. I conclude that the sections of Ch. 9.35 that regulate adult cabarets are facially unconstitutional because they are not narrowly tailored to serve a substantial government interest. Thus, I need not address plaintiff's other challenges. In explaining my conclusion, I will first explain the standard of review to which Ch. 9.35 is subject. Second, I will explore why the sections of Ch. 9.35 that regulate adult cabarets do not satisfy that standard. Finally, I will address why the failure of such sections to satisfy the applicable standard of review renders them facially invalid.

## A. Standard of Review

 Although it is sometimes unclear how to analyze an ordinance regulating adult entertainment, *see, e.g., Ben's Bar, Inc. v. Vill. of Somerset,* 316 F.3d 702, 707–22 (7th Cir.2003) (surveying standards potentially applicable to regulation of adult entertainment and devising "road map" to navigate them), the parties in the present case agree that the restrictions in Ch. 9.35 should be evaluated under the standards set forth in *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and its progeny. In *Renton,* the Supreme Court held that if a time, place and manner restriction is content-neutral rather than content-based,[3] the restriction is subject to intermediate rather than strict scrutiny.[4] *Id.* at 46–50, 106 S.Ct. 925. Under the *Renton* intermediate scrutiny standard, a regulation is constitutional if it is designed to serve a substantial government interest, is narrowly tailored to serve such interest, and allows for reasonable alternative avenues of communication.[5] *Id.* at 50–52, 106 S.Ct. 925.

In *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002), Justice Kennedy authored a concurring opinion that slightly modified the *Renton* framework.[6] In *Renton,* the Court classified a content-based adult entertainment zoning ordinance as content-neutral on the ground that the ordinance was targeted at the negative secondary effects of adult entertainment, such as crime and depressed property values, rather than the entertainment itself. 475 U.S. at 47, 106 S.Ct. 925. In *Alameda Books,* Justice Kennedy agreed that a regulation targeting the negative secondary effects of adult entertainment rather than the entertainment itself should be treated *as if it were* content-neutral. 535 U.S. at 448, 122 S.Ct. 1728. However, he stressed that referring to such regulations as content-neutral was "something of a fiction," and he joined the dissenting justices in characterizing laws targeting the negative secondary effects of adult entertainment as content-based. *Id.* at 448–49, 122 S.Ct. 1728. Thus, Justice Kennedy's concurrence replaces the *Renton* inquiry into whether a regulation of adult entertain-

---

**3.** A regulation is content neutral if it is not necessary to look at the content of the speech in question to determine whether the speaker violated the regulation; if it is necessary to look at the content of the speech, the regulation is content based. *See, e.g., Clarkson v. Town of Florence,* 198 F.Supp.2d 997, 1005 (E.D.Wis.2002) (collecting cases and describing difference between content-neutral and content-based regulations).

**4.** A law subject to strict scrutiny is constitutional only if it is justified by a compelling state interest, necessary to serve that interest and narrowly tailored. *Wil–Kar, Inc. v. Vill. of Germantown,* 153 F.Supp.2d 982, 989 (E.D.Wis.2001); *see also* Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 4:2 (2004).

**5.** Besides the intermediate scrutiny standard articulated in *Renton,* the Supreme Court has applied a second intermediate scrutiny stan-

dard to regulations of adult entertainment. This second standard was developed outside of the adult entertainment context in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In the adult entertainment context, this standard is normally applicable when the regulation at issue is a public indecency regulation. *See, e.g., Joelner v. Vill. of Washington Park,* 378 F.3d 613, 622 (7th Cir.2004). Ch. 9.35 is not a public indecency regulation, and neither party argues that the *O'Brien* standard is applicable.

**6.** *Alameda Books* did not produce a majority opinion. The Seventh Circuit has concluded that Justice Kennedy's concurrence is the narrowest and thus controlling opinion. *See Ben's Bar, Inc.,* 316 F.3d at 722 (citing *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Unless otherwise noted, all citations in the present decision to *Alameda Books* are to Justice Kennedy's concurrence.

ment is content-neutral with an inquiry into whether the regulation is designed to decrease the negative secondary effects of adult entertainment. This change appears to be one of phrasing rather than a real alteration of the *Renton* standard. *See Ben's Bar*, 316 F.3d at 721 n. 26.

■ Under the *Renton* standard as modified by *Alameda Books*, a regulation of adult entertainment is constitutional if it: (1) is a time, place and manner restriction rather than a total ban on adult entertainment; (2) targets the negative secondary effects of adult entertainment rather than the entertainment itself; (3) is narrowly tailored to serve a substantial government interest; and (4) allows for reasonable alternative channels of communication. Prongs one and two determine whether the regulation receives intermediate rather than strict scrutiny, and prongs three and four determine whether the regulation survives intermediate scrutiny. *See Dream Palace v. County of Maricopa*, 384 F.3d 990, 1013 (9th Cir.2004).

**B. Application of Standard**

■ Plaintiff argues that the sections of Ch. 9.35 that regulate adult cabarets are not narrowly tailored to serve a substantial government interest because they subject to regulation businesses that offer erotic dancing that have not been shown to generate negative secondary effects.[7] Specifically, plaintiff argues that the effect of § 9.35.020(c) (defining "adult cabaret") and §§ 9.35.020(t) & (w) (defining "semi-nude and specified anatomical areas"), is to subject to regulation establishments in which dancers perform with almost all of the buttocks covered and most of the breast below the top of the areola covered, and that defendant has not shown that such

establishments generate negative secondary effects.

A regulation is narrowly tailored when it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (internal quotation marks and citation omitted). A law is *not* narrowly tailored when the regulation burdens "substantially more speech than is necessary to further the government's legitimate interests." *Id.* In short, "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* In the present case, defendant justifies the provisions of Ch. 9.35 relating to adult cabarets on the ground that the regulations serve its legitimate interest in reducing the negative secondary effects associated with erotic dancing. Thus, to determine whether such provisions are narrowly tailored, I must determine whether they regulate a substantial amount of erotic expression that has not been shown to be associated with negative secondary effects.

It is undisputed that at least some of the businesses that Ch. 9.35 defines as adult cabarets generate secondary effects. Numerous cases state that establishments that feature nude dancing generate such effects. *See, e.g., R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 412 (7th Cir.2004). Under current case law, it is also accepted that establishments in which dancers wear pasties and G-strings or less generate negative secondary effects. *See, e.g., Pap's A.M.*, 529 U.S. at 289–96, 120 S.Ct. 1382 (plurality opinion); *Barnes*, 501 U.S. at 592, 111 S.Ct. 2456 (Souter, J. concurring);

---

7. Plaintiff does not dispute that Ch. 9.35 does not totally ban adult expression and that it in part targets the secondary effects of such expression rather than the expression itself.

Thus, plaintiff concedes that Ch. 9.35 is subject to intermediate rather than strict scrutiny.

*R.V.S., L.L.C.*, 361 F.3d at 412. However, the provisions of Ch. 9.35 relating to adult cabarets go well beyond regulating businesses in which dancers wear pasties and G-strings. In fact, such provisions regulate establishments that regularly feature dancers whose buttocks are almost entirely covered—in the words of the ordinance, "less than completely and opaquely covered"—and whose breasts are mostly covered—in the words of the ordinance, covered "below ... the top of the areola." § 9.35.020(w)(2). A G-string would not cover all of the buttocks. Nor would the bottom of a bikini bathing suit. In fact, only the most conservative of bathing suit bottoms would cover all of the buttocks. Further, pasties would not cover all of the breast below the top of the areola. Nor would a substantial number of bikini tops. Thus, the effect of Ch. 9.35 is to regulate establishments in which dancers wear two-piece bathing suits with conservative bottoms and tops that cover much of their breasts.

However, defendant has not shown that establishments in which dancers wear bathing suits generate negative secondary effects.[8] Defendant has cited no studies linking dancers wearing bathing suits with negative secondary effects. Further, defendant cites no judicial opinion recognizing that establishments in which dancers wear bathing suits generate negative secondary effects. Finally, defendant may not assume that such establishments generate negative secondary effects. *See*

*R.V.S., L.L.C.*, 361 F.3d at 410–14 (stating that municipalities may not simply assume existence of negative secondary effects).[9]

Moreover, by regulating establishments that have not been shown to generate negative secondary effects, the sections of Ch. 9.35 relating to adult cabarets burden substantially more expression than is necessary to serve defendant's interest. This is so because many businesses may choose to offer erotic dancing that does not generate negative secondary effects precisely because such expression is not subject to governmental regulation. Ch. 9.35 imposes highly burdensome requirements on businesses that it classifies as sexually oriented, including requirements that such businesses obtain licenses to operate, not locate within 500 feet of a residence, church, school, park or place that serves alcohol, not serve alcohol and operate only at specified times. Given these severe restrictions, one or more of which will likely make it impossible for some adult cabarets to operate at all, businesses may choose to offer dancers in bathing suits—which, under a properly drawn ordinance, would enable them to avoid regulation—rather than offer nude or semi-nude dancing and be subject to the ordinance's myriad restrictions. As plaintiff's counsel indicated at oral argument, businesses prefer to avoid burdensome regulations and will gauge the nature of the erotic expression they present accordingly:

---

**8.** The type and amount of evidence that a municipality must produce to show that a regulation is targeted at reducing secondary effects is discussed in detail in such cases as *Alameda Books*, 535 U.S. at 451–53, 122 S.Ct. 1728; *R.V.S., L.L.C.*, 361 F.3d at 410–14; and *G.M. Enters., Inc. v. Town of St. Joseph, Wis.*, 350 F.3d 631, 638–40 (7th Cir.2003). In the present case, I need not address the issue because defendant has produced *no* evidence indicating that establishments in which dancers wear bathing suits generate such effects.

**9.** In *R.V.S., L.L.C.*, the Seventh Circuit recently rejected a municipality's attempt to regulate a form of erotic dancing other than nude or semi-nude dancing without showing that such dancing is likely to generate negative secondary effects. 361 F.3d at 410–14 (invalidating regulation of "Exotic Dancing Nightclubs," which included clubs offering dancing in which dancers performed a "striptease" but did not appear nude or semi-nude).

[P]eople will want to run unlicensed businesses with dancers wearing as little clothing as they lawfully may. And I can cite as an example my client, Grand Daddy, Inc. in the City of Schofield, Wisconsin ... [in which] my clients were running, because of the definition of nudity in that ordinance, which has been invalidated, my clients were running dancers with bikinis on, conventional bikinis like you would see at the beach, that covered the breasts down to the bottom of the breast, certainly, probably showed some cleavage.... And had complete bikini bottoms on and covered their buttocks.

(Tr. at 6.)

Thus, insofar as Ch. 9.35 regulates adult cabarets, it subjects to regulation a potentially large number of businesses that have not been shown to generate negative secondary effects. Moreover, defendant has not shown that subjecting such businesses to regulation is necessary in order to further its legitimate interest in regulating businesses that have been shown to generate such effects. As a result, Ch. 9.35 burdens substantially more speech than is necessary to further defendant's legitimate interest in regulating the negative secondary effects of nude or semi-nude dancing. Therefore, those sections of Ch. 9.35 that regulate adult cabarets are not narrowly tailored and, accordingly, fail intermediate scrutiny.

### C. Facial Invalidity

#### 1. Types of Facial Invalidity

 In order for plaintiff to prevail on its facial challenge, the provisions of Ch. 9.35 that apply to adult cabarets must not only fail intermediate scrutiny but also be facially invalid.[10] In the First Amendment context, a law may be facially invalid if it is (1) overbroad, or (2) unconstitutional in every application. *MDK, Inc.*, 277 F.Supp.2d at 948 (citing *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). A provision is overbroad if, even though it may be constitutionally applied to the plaintiff, it is so broadly worded that it inhibits the constitutionally protected speech of third parties not before the court. *See Taxpayers for Vincent*, 466 U.S. at 798, 104 S.Ct. 2118. Such challenges are permitted because the threat of enforcement of an overbroad law may "chill" protected speech. *See, e.g., Virginia v. Hicks*, 539 U.S. 113, 119, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). Thus, the overbreadth concept is sometimes understood as an exception to the prudential standing requirement that a litigant may assert only his or her own rights in federal court.[11] *See, e.g., Broadrick v. Oklahoma*, 413 U.S. 601, 610–17, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The Supreme Court has characterized overbreadth as "strong medicine" to be employed "sparingly and only as a last resort." *Id.* at 613, 93 S.Ct.

---

**10.** A constitutional challenge may either be facial or "as applied." *MDK, Inc.*, 277 F.Supp.2d at 947. A facial challenge contends that a law or section thereof cannot be constitutionally applied to any set of facts, and an as applied challenge argues that the provision challenged is unconstitutional only as applied to the facts of the case under consideration. *Id.*

**11.** However, properly analyzed, the overbreadth doctrine is not just an exception to standing requirements but part of the determination of a First Amendment challenge on the merits. *See Virginia v. Hicks*, 539 U.S. at 120, 123 S.Ct. 2191; *Sec'y of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 958–59, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (stating that "[t]he requirement that a statute be 'substantially overbroad' before it will be struck down on its face is a 'standing' question only to the extent that if the plaintiff does not prevail on the merits of its facial challenge and cannot demonstrate that, as applied to it, the statute is unconstitutional, it has no 'standing' to allege that, as applied to others, the statute might be unconstitutional").

2908. Thus, before the doctrine may be invoked, the overbreadth must be real and substantial, "judged in relation to the [law's] plainly legitimate sweep." *Id.* at 615, 93 S.Ct. 2908; *see also New York v. Ferber,* 458 U.S. 747, 767–73, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).[12]

■ A law is unconstitutional in every application if the law itself—as opposed to some number of its applications—contains a defect that renders it unconstitutional under the applicable substantive constitutional standard. *See Munson,* 467 U.S. at 967 n. 13, 104 S.Ct. 2839; *see also Schultz v. Frisby,* 807 F.2d 1339, 1349 (7th Cir. 1986), *rev'd on other grounds by* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (recognizing difference between two forms of facial challenges and stating that they are often conflated). In *Munson,* the

Court noted that courts sometimes misapply the term "overbreadth" to challenges "to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest." 467 U.S. at 967 n. 13, 104 S.Ct. 2839. The Court went on to state that "[w]hether that challenge should be called 'overbreadth' or simply a 'facial' challenge, the point is that there is no reason to limit challenges to case-by-case 'as applied' challenges when the statute on its face *and therefore in all its applications* falls short of constitutional demands." *Id.* (emphasis added).[13]

■ Thus, a law that on its face fails to satisfy the constitutional standard under which it is appropriately evaluated is unconstitutional in every application.[14]

**12.** *New York v. Ferber* provides an example of the overbreadth doctrine at work. There, a defendant who distributed constitutionally unprotected child pornography challenged a statute prohibiting such conduct as unconstitutionally overbroad on the ground that it prohibited constitutionally protected forms of speech, such as the use of children to produce educational, medical or artistic works. *Id.* at 766–74, 102 S.Ct. 3348. The Court rejected this argument, concluding that the law was not *substantially* overbroad because its valid applications (applications to child pornography) outnumbered its invalid ones (applications to use of children in educational, medical and artistic works). *Id.* at 773–74, 102 S.Ct. 3348. The Court concluded that educators and artists would rarely need to use children in a manner that could be considered pornographic, and thus the number of potentially impermissible applications of the law was small. *Id.* at 773, 102 S.Ct. 3348.

As *Ferber* demonstrates, where there is an overbreadth challenge, a court must separate the valid and invalid applications of a provision into two "piles" and then compare the two. If the pile of invalid applications is substantial in comparison to the valid pile, the court will find the provision unconstitutionally overbroad. If not, the court will find the provision facially constitutional. The dif-

ficulty, of course, is in determining how big the invalid pile must be before it is "substantial" in comparison to the valid pile. As the Supreme Court acknowledged, "the concept of 'substantial overbreadth' is not readily reduced to an exact definition." *Taxpayers for Vincent,* 466 U.S. at 800, 104 S.Ct. 2118.

**13.** Justice Scalia, joined only by Justice Thomas, has stated that *Munson* has been implicitly overruled by a later case, *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), in which the Court held that outside of the First Amendment context, a facial challenge will be successful only if the challenger establishes that no set of circumstances exists under which the law would be valid. *Virginia v. Black,* 538 U.S. 343, 375 n. 4, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (Scalia, J., concurring in part and dissenting in part). However, a majority of the Court as well as the Seventh Circuit considers *Munson* to be good law. *See Hodgkins v. Peterson,* 355 F.3d 1048, 1056–57 (7th Cir.2004).

**14.** *Munson* stated that a law is unconstitutional in every application when a statute restricts protected First Amendment activity in all of its applications and "does not employ means narrowly tailored to serve a compelling governmental interest." 467 U.S. at 967 n. 13,

For example, if a regulation is enacted for the purpose of suppressing adult expression rather than reducing negative secondary effects, it will be subject to, and most likely fail, strict scrutiny. *See, e.g., Alameda Books,* 535 U.S. at 448, 122 S.Ct. 1728. The regulation will be facially invalid as unconstitutional in every application because it is an impermissible content-based regulation of protected expression. It is not content-based as applied to some litigants and content-neutral as applied to others—it is either content-based or not. Further, it does not fail strict scrutiny as applied to some litigants but survive as applied to others—it either fails strict scrutiny or it does not. In short, a regulation of adult entertainment that is not targeted at negative secondary effects will be unconstitutional in every application because the regulation—and not simply its *applications*—fails the substantive constitutional standard under which it must be evaluated.

### 2. Facial Invalidity of Ch. 9.35's Regulation of Adult Cabarets

 Based on the foregoing principles, I conclude that insofar as it regulates adult cabarets, Ch. 9.35 is facially unconstitutional because it is unconstitutional in every application. As previously discussed, the sections in question are subject to intermediate scrutiny and fail such scrutiny because of their lack of narrow tailoring, i.e., they burden substantially more speech than is necessary to further defendant's legitimate interests. Thus, they do not satisfy the constitutional standard un-

der which they are properly evaluated and, accordingly, are unconstitutional in every application. *Cf. Schultz,* 807 F.2d at 1348–50 (concluding that law which was not narrowly tailored was facially unconstitutional because invalid in every application).

*Board of Trustees of the State University of New York v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), is not to the contrary. In *Fox,* a commercial speech case, Justice Scalia indicated that a challenge based on overbreadth was facial, whereas one based on the lack of narrow tailoring was as applied. *Id.* at 482–83, 109 S.Ct. 3028. However, *Fox* did not discuss *Munson,* in which the Court stated that a provision that did "not employ means narrowly tailored" was facially invalid because unconstitutional in every application. *Munson,* 467 U.S. at 967 n. 13, 104 S.Ct. 2839. Further, if applied in the *Renton* context, the statement in *Fox* would produce a result that the Court is unlikely to have intended. As previously discussed, intermediate scrutiny under *Renton* requires that a regulation be (1) designed to serve a substantial governmental interest; (2) narrowly tailored; and (3) leave open alternative avenues of communication. If applied in the *Renton* context, the statement in *Fox* would lead to the irrational result that a provision that failed to satisfy prongs (1) or (3) would be facially invalid as unconstitutional in every application but one that failed prong (2) would only be unconstitutional as applied. This result would also be inconsistent with *Hodgkins,* in which the court indicated

104 S.Ct. 2839. The quoted language appears to describe a law that fails strict scrutiny. *Cf.* Smolla, *supra* note 4. However, the principle for which *Munson* stands is broader than simply that a law is facially invalid whenever it fails strict scrutiny. Rather, the principal for which *Munson* stands is that a law is facially invalid whenever, on its face, it fails the substantive constitutional standard

applicable to such law, whether that standard is strict scrutiny, intermediate scrutiny or some other standard. *Cf.* Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement,* 48 Am. U.L.Rev. 359, 438–51 (1998) (describing several constitutional standards which render laws that fail such standards unconstitutional in every application).

that a law that was not narrowly tailored and therefore failed intermediate scrutiny was susceptible to facial invalidity under *Munson*. *See* 355 F.3d at 1056–65.

In any case, even if the lack of narrow tailoring of the sections of Ch. 9.35 regulating adult cabarets does not render them facially invalid, I would find them facially invalid because substantially overbroad. The "legitimate sweep" of such sections is their application to establishments in which dancers appear nude or in pasties and G-strings. However, as previously discussed, such sections illegitimately apply to businesses in which dancers wear bathing suits. Further, as discussed, many businesses will wish to offer such entertainment in order to exercise their First Amendment right to present erotic entertainment to the greatest extent possible without being subjected to regulation. Thus, the potential impermissible applications of Ch. 9.35's regulation of adult cabarets are substantial in relation to the legitimate applications. Therefore, such regulation is substantially overbroad.

▬ Even if a law is substantially overbroad, it may not be invalidated on its face if it is subject to a narrowing construction that eliminates the overbreadth. *See, e.g., Ferber,* 458 U.S. at 769 n. 24, 102 S.Ct. 3348; *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908; *Berg v. Health & Hosp. Corp. of Marion County, Ind.,* 865 F.2d 797, 805 (7th Cir.1989). However, defendant has not suggested that the definition of adult cabaret in Ch. 9.35 is susceptible to a limiting construction preventing it from applying to establishments in which dancers wear bathing suits, and I can think of none myself. Thus, Ch. 9.35's regulation of adult cabarets cannot be cured by a limiting construction.

## IV. CONCLUSION

For the reasons stated, the provisions of Ch. 9.35 relating to adult cabarets are not narrowly tailored to serve a substantial government interest. Further, because the absence of narrow tailoring renders the regulation unconstitutional in every application, insofar as it regulates adult cabarets, Ch. 9.35 is invalid on its face.[15] I reiterate that defendant is not necessarily barred from regulating establishments in which dancers wear more than pasties or G-strings, but to do so it must present evidence or identify studies showing that such establishments generate negative secondary effects. *See R.V.S., L.L.C.,* 361 F.3d at 411, 415–16. Defendant is, of course, free to revise the provisions of its ordinance regulating adult cabarets so that such provisions apply only to establishments shown to generate secondary effects. However, based on the present record such provisions are facially invalid.

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment on the issue of liability is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (R. 43) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a surre-buttal brief (R. 65) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to bifurcate (R. 54) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that, based on the stipulation of the parties, plaintiff's motion to file a brief in excess of the page limitation (R. 51) is **GRANTED.**

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **November 29, 2004 at 10:30 a.m.** to

15. I express no view on the validity of any other section of Chapter 9.35.

determine how this case will proceed. The court will initiate the call.